UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>-v-<br><br>RODNEY BRANDY,<br>    Defendant. | Crim. No. 3:02CR250 (AWT)<br><br>March 22, 2006 |

**RODNEY BRANDY'S MEMORANDUM IN SUPPORT OF HIS
REQUEST THAT THE COURT RESENTENCE HIM IN LIGHT OF
UNITED STATES V. BOOKER AND UNITED STATES V. CROSBY**

The Second Circuit has remanded Rodney Brandy's case to this Court in light of United States v. Booker, 125 S. Ct. 738 (2005) and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005) "for further proceedings in conformity with Crosby." Following this remand, which took place in April, 2005, undersigned counsel requested that the Court appoint him as CJA counsel for Mr. Brandy, which the Court did by Order dated May 9, 2005.

At that time, undersigned counsel also requested permission to file with the Court a brief in support of Mr. Brandy's claim that this Court should order a re-sentencing in light of Booker and Crosby. However, the Court has not yet acted on that request. By motion filed today, Mr. Brandy has renewed this request, and he submits this memorandum in the event the Court grants that motion.

1

Mr. Brandy respectfully submits that for the reasons set forth below, the Court, applying the sentencing law as it now exists post-Booker, would impose a sentence that is "materially different" than the 108 month sentence it originally imposed on Mr. Brandy in the pre-Booker era. Thus, a resentencing is warranted.

**Summary of Mr. Brandy's Argument**

Mr. Brandy is a true first time offender – that is, someone with **zero** criminal history points – who received a sentence of 108 months in prison for a drug conspiracy offense. At sentencing, Mr. Brandy argued for a downward departure based solely on his extraordinary military service. This Court rejected Mr. Brandy's argument, finding that it did not meet the then-governing legal standard for a downward departure set forth in 18 U.S.C. §3553(b)(1). AA 201-03.[1] The Court stated that it found Mr. Brandy's sentencing Guideline range to be "very high" "in light of [his] personal history and characteristics, your military service, [and] the reasons for which you got involved in the offense." AA 202. However, the Court nevertheless viewed itself as bound by the calculated Sentencing Guideline range, and thus sentenced Mr. Brandy to the very bottom of that Guideline range. AA 203.

Now, the Court is no longer bound by a mandatory Guideline range, and may impose a lesser, non-Guideline sentence based on factors that may not have warranted a downward departure prior to Booker. Thus, even if the Court is not persuaded that Mr. Brandy's military service is sufficient to warrant a lesser sentence, there are other factors that the Court may now also consider. For example, the Court may consider (1) the fact that Mr. Brandy is a true first

---

[1] "AA" refers to the Appellant's Appendix filed by Mr. Brandy with the Second Circuit in November, 2004, submitted herewith.

2

time offender and thus less likely to recidivate, (2) that because this case involved crack cocaine Mr. Brandy was exposed to severe Guidelines, (3) that Mr. Brandy had a crack cocaine addiction that led to his involvement in the offense, and (4) that he made efforts at rehabilitation even before sentencing. These are all factors that, alone or in combination, can support a non-Guideline sentence, that is, a sentence that is "materially different" than the Court originally imposed on Mr. Brandy. If the Court agrees that such a lesser sentence would have been imposed under the law as it now stands, resentencing is required.

**The Crosby Remand**

The Second Circuit has remanded Mr. Brandy's case for consideration in light of United States v. Crosby. In Crosby, the Second Circuit decided that in cases like Mr. Brandy's where a defendant was sentenced prior to Booker, the proper procedure would be "a remand to the district court, not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine whether to re-sentence now fully informed of the new sentencing regime, and if so, to re-sentence." United States v. Crosby, 397 F.3d at 117 (emphasis added).

The determination whether to resentence hinges upon whether the Court would have imposed a "materially different" sentence had it know that the Sentencing Guidelines were no longer mandatory and compliance with them no longer required. The Second Circuit stated:

> A remand for determination of whether to re-sentence is appropriate in order to undertake a proper application of the plain error and harmless error doctrines. Without knowing whether a sentencing judge would have imposed a materially different sentence, under the circumstances existing at the time of the original sentence, if the judge had discharged his or her obligations under the post-Booker/Fanfan regime and counsel had availed themselves of their new opportunities to present relevant

> considerations, an appellate court will normally be unable to assess the significance of any error that might have been made. . . . . Furthermore, even if a judge, prior to Booker/Fanfan, indicated an alternative sentence that would have been imposed if compliance with the Guidelines were not required, that alternative sentence is not necessarily the same one that the judge would have imposed in compliance with the duty to consider all of the factors listed in Section 3553(a). In addition, such an alternative sentence is not necessarily the same one that the judge would have imposed after presentation by the Government of aggravating circumstances or by the defendant of mitigating circumstances that existed at the time but were not available for consideration under the mandatory Guidelines regime.

United States v. Crosby, 397 F.3d at 117-118.

"If a district court determines that a nontrivially different sentence would have been imposed, that determination completes the demonstration that the plain error test is met." Id. at 118. Thus, under Crosby, if the Court determines that its original sentence would have been "nontrivially different," the Court must proceed to re-sentencing in compliance with "all applicable sentencing requirements." Id. at 118 n.20 (citing Fed. R. Crim. P. 32).

**Sentencing Law Post-Booker**

Whether the Court would have imposed a "nontrivially different sentence" requires an examination of the sentencing law that now governs. Prior to Booker, the Guidelines were "mandatory and binding on all judges," United States v. Booker, 125 S. Ct. at 750, and sentencing judges were required to impose a sentence within the applicable Guideline range "unless the court [found] that there exist[ed] an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission . . . ." 18 U.S.C. § 3553(b)(1).

4

The Booker court held that the mandatory nature of the Guidelines rendered them constitutionally infirm and in violation of the Sixth Amendment, and to fix this infirmity, the Supreme Court severed 18 U.S.C. § 3553(b)(1) from the Sentencing Reform Act, thus rendering the Guidelines merely advisory provisions that recommend, rather than required, the selection of particular sentences in response to differing sets of facts. Booker, 125 S. Ct. at 757.

The stranglehold that the mandatory Guideline regime had over federal sentencing was illustrated by the Booker Court's response to the argument that the departure authority that the district court had pre-Booker somehow made the Guidelines not mandatory, thus avoiding the Sixth Amendment issue. The Court wrote:

> The Guidelines permit departures from the prescribed sentencing range in cases in which the judge "finds that there exists an aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." . . . At first glance, one might believe that the ability of a district judge to depart from the Guidelines means that she is bound only by the statutory maximum. Were this the case, there would be no Apprendi problem. Importantly, however, departures are not available in every case, and in fact are unavailable in most. In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible. In those instances, the judge is bound to impose a sentence within the Guideline range.

Booker, 125 S. Ct. at 750.

By severing section 3553(b)(1), the Supreme Court gave district courts the authority to exercise broad discretion in imposing a sentence within a statutory range. In exercising this discretion to "impose a sentence sufficient, but not greater than necessary," the district court

must consider the factors listed in 18 U.S.C. § 3553(a), meaning that an "advisory" sentencing Guideline range is just one among many other statutory factors to be considered in imposing sentence. 18 U.S.C. § 3553(a)(1)-(7).

After Booker, the Second Circuit decided Crosby, in which it explained the impact of Booker on federal sentencing:

> we can identify several essential aspects of Booker/Fanfan that concern the selection of sentences. First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

Crosby, 397 F.3d at 113.

Thus, the Guidelines have now become:

> a marker on the path toward a reasonable sentence. However, it is no longer necessarily the ultimate destination on that path. In the post-Booker regime, district courts effectively must decide whether the applicable Guidelines range represents a reasonable sentence. If, after thorough consideration of the other §3553(a) factors in light of the particular facts of the case, the sentencing judge determines that the Guideline sentence is not reasonable, then a non-Guideline sentence is appropriate.

United States v. Jasper, 2005 U.S. Dist. LEXIS 22127 at *17-18 (S.D.N.Y. 2005). Indeed, the Court "need not impose a Guideline sentence, and may, if doing so would be reasonable,

6

lower the sentence below the Guideline range even when a downward departure is unavailable." United States v. Brady, 417 F.3d 326, 333 (2d Cir. 2005). See also Booker, 125 S. Ct. at 790 n.3 (Scalia, J., dissenting) ("The Guidelines . . . are the product of policy decisions by the Sentencing Commission . . . If those policy decisions are no longer mandatory, the sentencing judge is free to disagree with them.")

**Argument**

The impact on Mr. Brandy of this significant change in the law of sentencing is clear, and quite dramatic.  Clearly (and correctly at the time), at Mr. Brandy's original sentencing, the Court felt bound by the Guideline range.  Indeed, at sentencing, the Court, applying the exacting standard for downward departure that governed at the time, rejected Mr. Brandy's request for a downward departure from the mandatory Guideline range, finding that Mr. Brandy did not establish the required "extraordinary" situation.

Now, there is no longer any need for the Court to find, for example, that Mr. Brandy's military service is "extraordinary."  Rather, the Court is free to consider that fact, as well as all other relevant sentencing factors set forth in 18 U.S.C. §3553(a), in imposing a sentence that is reasonable, and "not greater than necessary" to serve the purposes of sentencing.

A.     Mr. Brandy's Guilty Plea and Sentencing

On May 6, 2003, Mr. Brandy pleaded guilty to Count One of the Indictment, charging him with a violation of 21 U.S.C. §846.  The statutory penalties for this offense are a mandatory minimum of ten years' imprisonment, and a maximum of life imprisonment. AA 40. At Mr. Brandy's guilty plea proceeding, the Court explained that the Sentencing

Guidelines "place limits on a judge's discretion in imposing a sentence. These Guidelines limit how high the sentence can be and also limit how low the sentence can be." AA 69-70.

Following Mr. Brandy's guilty plea, a United States Probation Officer prepared a Presentence Report ("PSR"). AA 85-115. The Probation Officer established Mr. Brandy's base offense level at Level 36 based on the conclusion that 1.3 kilograms of cocaine base was attributed to him. AA 96. From this level, two levels were subtracted because Mr. Brandy qualified for the "safety valve," and three levels were subtracted for acceptance of responsibility. AA 97. Because Mr. Brandy had no prior criminal convictions, and thus **zero** criminal history points, his criminal history category was Category I. AA 97. At the intersection of Offense Level 3I and CHC I, Brandy's Sentencing Guideline range was 108-135 months in prison. AA 102.

Mr. Brandy's defense counsel objected to the drug quantity calculation and to the failure of the Probation Officer to reduce his offense level for minor participation in the offense. AA 106-107. Mr. Brandy also requested a downward departure based soley on extraordinary military service. AA 106-108, 127-28. Defense counsel ultimately withdrew the objections to drug quantity and role in the offense. AA 113, 121-24, 133, 171-72. The government objected to the requested downward departure; in its view Mr. Brandy's "military service [was] commendable but not extraordinary." AA 175, 198, 201.

At sentencing, the Court rejected Mr. Brandy's request for a downward departure. Clearly, the Court's ruling denying Mr. Brandy a downward departure was based on its view – correct at the time – that the Sentencing Guideline range of 108-135 was mandatory, and that any departure from this range needed to be based on factors that were "extraordinary" or not

8

adequately considered by the sentencing commission. Thus, the Court made the following ruling with respect to Mr. Brandy's request for a downward departure:

> I note that you have moved for a downward departure based on your military service. This is a discouraged ground for departure under Guideline Section 5H1.11. That means it's not ordinarily relevant but in extraordinary circumstances can be a grounds for a departure.
>
> I conclude on this record that you do not meet the standard for a downward departure on this basis. Your military service, while it is commendable, is not extraordinary; neither is the fact that a person charged with a drug offense has served in the military extraordinary.
>
> Moreover, I must admit that even if for some reason you did meet the standard for a downward departure, I would choose not to exercise my discretion to depart downward based on the specific facts and circumstances of this case in terms of the needs that I think should be taken into account in terms of the purposes of imposing a criminal sentence. I believe the need for general deterrence, for one thing, would suggest that it's inappropriate to depart downward in this case on such a ground, even if you did meet the standard.
>
> In looking at just punishment as a purpose to be served, this is a serious offense and I think we have to not lose sight of that fact, **but I think it's also a very high range in terms the sentencing range to which you are exposed, in light of your personal history and characteristics, your military service, the reasons for which you got involved in the offense.**
>
> So I think that these are factors that – when I say "there are," I mean the factors that your counsel argues in terms of the motion for the downward departure are facts that I should place a good deal of weight on in deciding where in the applicable range to impose sentence. And in fact, they lead me to conclude that the sentence at the bottom of the range is the most appropriate in your case.

AA 201-03 (emphasis added).

The Court then sentenced Mr. Brandy to the low end of the applicable Guideline range, or 108 months in prison.  AA 203, 205-06.  The Court stated, "I have chosen to sentence you at the bottom of the applicable range based on the facts and circumstances emphasized by your attorney today concerning your military service and your motivation for getting involved in this criminal conduct."  AA 203.

B.  The Court, Post-Booker, Would Have Imposed a Nontrivially Different Sentence

Now that Booker has eliminated the mandatory nature of the Guidelines, the Court is free to consider whether any of the facts previously presented by Mr. Brandy in the context of his request for a downward departure, or any other factors, would warrant a sentence below an advisory Sentencing Guideline range.

The Court is no longer bound by pre-Booker law that prohibited a downward departure based on certain circumstances deemed by the Guidelines to be "not ordinarily relevant," such as military service.  See U.S.S.G. 5H1.11.  Thus, Mr. Brandy's military service can lead to a lesser, "non-trivially" different sentence even if the Court continues to view it as not extraordinary.  See United States v. Nellum, 2005 U.S. Dist. LEXIS, *15 (N.D. Ind. 2005) (reduction in sentence from Guideline range of 168-210 months to 108 months warranted given defendant's age, low likelihood of recidivism, status as a veteran, strong family ties, medical condition and drug dependency).

Moreover, even if the Court believes that a lesser sentence is not warranted on the basis of Mr. Brandy's military service alone, there are several other factors that alone or in combination justify a sentence below the advisory Guideline range.  Indeed, an examination of Mr. Brandy's "history and characteristics" reveals that the following factors are present,

neither of which was fully explored or argued previously. For example, in addition to Mr. Brandy's military service, a lesser sentence may be based on the fact that Mr. Brandy is a true first time offender with **zero** criminal history points. AA-97. As a result, Mr. Brandy is among that category of offenders with the lowest risk of recidivism. See United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 7, 21, ( www.ussc.gov.) This low risk of recidivism is a recognized basis for a non-Guideline sentence. See United States v. Hernandez, 2005 U.S. Dist. LEXIS 10026, *14 (S.D.N.Y. 2005) (non-Guideline sentence imposed in light of low probability of recidivism and need for ongoing medical treatment). Indeed, the Court's conclusion that a sentence at the bottom end of the Guideline range was appropriate may be an indication that the Court felt that Mr. Brandy, as a first time offender, deserved further credit, but felt otherwise constrained by the then-mandatory nature of the Guidelines. The Court is no longer constrained thus.

     Moreover, Mr. Brandy has a college degree, and was attending graduate school at the time of the offense, and became involved in the instant offense as a result of his addiction to crack cocaine. AA 118-120, 127. Further, Mr. Brandy was exposed to an extremely high Guideline range because the offense involved crack cocaine, which Guideline range was "greater than necessary," 18 U.S.C. §3553(a), to comply with the purposes of sentencing. A lesser sentence would also be warranted on this basis, particularly where, as here, there are no other countervailing or aggravating factors. See United States v. Gerancon, 2005 U.S. Dist. LEXIS 11290, *3 (D. Conn. 2005) (Underhill, U.S.D.J.) (district court stated that it was persuaded by the fact that the Sentencing Commission has sought to reduce the sentencing

disparity between cocaine and crack and would have imposed a shorter term of incarceration on that basis had it not been for three other factors that tended to "negate the impact of the crack guidelines in this case.")

These are all factors that the Court may consider and use to fashion a lower, non-Guideline sentence, and Mr. Brandy should be given the opportunity to fully present and argue these and other relevant factors at resentencing.

**Conclusion**

The relevant inquiry at this stage is whether the Court, had it known that it was not bound by a mandatory Sentencing Guideline range, would have imposed a "materially different" sentence. For all of the reasons set forth above, the Court would have imposed such a lesser sentence under this new sentencing scheme, and a re-sentencing is therefore warranted.

Respectfully submitted,

By:_____
Joseph W. Martini (ct 07225)
Pepe & Hazard LLP
30 Jelliff Lane
Southport, CT  06890
(203) 319-4002
(203) 259-0251 fax
jmartini@pepehazard.com

JWM/32836/2/75858v1
03/22/06-SPT/

**CERTIFICATION**

This is to certify that a copy of the foregoing was sent by first-class mail, this 22nd day of March, 2006, to the following counsel of record:

H. Gordon Hall, Esq.
Assistant United States Attorney
Office of United States Attorney
157 Church Street, 23rd Floor
New Haven, CT  06510

_____
Joseph W. Martini

JWM/32836/2/75858v1
03/22/06-SPT/